E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

January 16 2018 3:37 PM

KEVIN STOCK
COUNTY CLERK
NO: 18-2-04745-1

# SUPERIOR COURT OF THE STATE OF WASHINGTON
# FOR PIERCE COUNTY

DONALD JONES and ROYA REZAI, husband and wife,

          Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,

          Defendant.

NO.

COMPLAINT FOR DAMAGES

Plaintiffs Dr. Donald Derek Jones, PhD, and Dr. Roya Rezai, PhD, by and through their attorneys, Darrell L. Cochran, Thomas B. Vertetis, and Christopher E. Love, and Pfau Cochran Vertetis Amala PLLC, hereby state and allege as follows.

## I.   INTRODUCTION

1.1   On December 18, 2017, at approximately 7:33 a.m., Defendant National Railroad Passenger Corporation ("Amtrak")'s *Cascades* passenger train 501 (hereinafter "Train," "Train 501," or "*Cascades* 501") derailed southwest of DuPont, Washington, on its inaugural run on the Point Defiance Bypass ("Bypass"). A purpose of the Bypass was to divert the passenger line from slower, curvilinear tracks along the Puget Sound to a lesser-used freight

COMPLAINT - 1 of 14



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

line, allowing the *Cascades* line to achieve shorter travel times by creating conditions for faster speeds:



1.2     Specifically, the Bypass's goal was to decrease travel times from Seattle to Portland by a scant seven-to-ten minutes.

1.3     Unfortunately for the passengers of *Cascades* 501, the administrators and operators involved raced recklessly to put the Train into high speed. Amtrak achieved its goal of higher speeds without commonsense, basic, and readily available safety measures in place.



At the time of the derailment, the Train was travelling at 78 miles per hour ("mph"), approximately 50 mph over the speed limit for that curved section of track.

      1.4      The results of this grossly excessive high-speed derailment were catastrophic. The derailment sent the lead locomotive and multiple rail cars tumbling toward and onto Interstate 5 below, heavily congested due to the morning rush hour:







911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

1.5     On information and belief, this was the interior of the passenger car in which Plaintiff Jones was seated in the aftermath of the derailment:



1.6     This grossly excessive high-speed derailment resulted in predictably catastrophic human losses.  Three passengers were killed and over 80 individuals were injured in the derailment, straining local hospitals and emergency first responders to their limits.

1.7     *Cascades* 501's derailment was yet another in a disturbing pattern of recent derailments or incidents involving Amtrak trains under unsettlingly similar circumstances.  On May 12, 2015, Amtrak Train 188 derailed near Philadelphia, Pennsylvania, while travelling through a sharp curve at approximately 100 mph—twice the speed limit—killing eight people and injuring over 200.

1.8     On July 2, 2017—less than six months before the *Cascades* 501 derailment—*Cascades* Train 506 derailed near Steilacoom, Washington, threatening to send several

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

passenger cars plummeting into the Puget Sound:



1.9     According to Amtrak, the primary cause of *Cascades* 506's derailment was "human error": namely, travelling in excess of the 40-mph speed limit for that section of track. The derailment—and Amtrak's statements regarding its cause—raised "concerns" significant enough for the Washington State Department of Transportation ("WSDOT") to issue a July 6, 2017 letter to Amtrak requesting a "Corrective Action Plan" by July 31 "detailing protocols, procedures, and actions taken by Amtrak to prevent future occurrences of this nature."

1.10    One media report regarding *Cascades* 506's derailment noted that Positive Train Control ("PTC"), described by the media outlet as "a computer-controlled braking system," would have "triggered the train's brakes so it meet [sic] track requirements," but noted that Amtrak was not yet utilizing that technology "on the west coast."

1.11    Perhaps in light of these relatively recent Amtrak excessive-speed derailments—particularly on the same *Cascades* service—this precise sort of high-speed disaster on the Bypass was predicted by some. Weeks before the *Cascades* 501 derailment, on December 4,

COMPLAINT - 5 of 14



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

2017, at a Lakewood city council meeting at which WSDOT representatives presented on the new, high-speed passenger service using the Bypass, Lakewood Mayor Don Anderson demanded increased "safety enhancements" on the line, warning:

> It's virtually inevitable that someone is going to get killed that wouldn't be killed otherwise. Come back when there is that accident, and try to justify not putting in those safety enhancements . . . this project was never needed and endangers our citizens . . . .

1.12   In the wake of this disaster, Governor Jay Inslee stated, "There are a thousand unanswered questions about this right now." Plaintiff Jones, a survivor of the *Cascades* 501 derailment, and his wife, Plaintiff Rezai, agree. Paramount among those questions are: why, with the repeated, documented concerns of state and local officials regarding Amtrak excessive speed derailments, did *Cascades* 501's maiden voyage result in yet another excessive speed derailment? Given these concerns and the unacceptably inadequate safety of this particular route, why was passenger service on the Bypass permitted to proceed in the first place? What should have been done to prevent this foreseeable and foreseen disaster? And who should be held responsible for the resulting, unnecessary loss of life and lifelong injuries, trauma, and repercussions suffered by Plaintiffs and other survivors of this entirely preventable tragedy?

## II.   PARTIES

2.1   Plaintiffs Dr. Donald Jones and Dr. Roya Rezai are married individuals who currently reside in Bellevue, King County, Washington.

2.2   Defendant Amtrak is a corporation with headquarters in Washington, D.C. Amtrak is a common carrier engaged in the business of transporting passengers by train throughout Washington and the United States. Amtrak owns and operates Train 501 which operates between Seattle, Washington and Portland, Oregon.

COMPLAINT - 6 of 14



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

2.3    It is likely that there are other entities or "John Does" who may be at fault and when their identification becomes known with specificity, these pleadings may be amended accordingly.

### III.    JURISDICTION AND VENUE

3.1    The Court has jurisdiction over the claims asserted by Plaintiffs against Amtrak under RCW 4.28.185 and other Washington state constitutional provisions, statutes, and common law.

3.2    Venue is proper in this Court under RCW 4.12.025(1) because Amtrak does business in and about Pierce County, Washington.  Venue is also proper in this Court under RCW 4.12.025(3) because the tort committed against Plaintiffs occurred in Pierce County, Washington and work was performed for Amtrak in Pierce County.  Further, venue is proper in this Court under RCW 4.12.020(3) because this Complaint arises out of events that occurred in Pierce County, Washington.

### IV.    STATEMENT OF FACTS

4.1    On December 18, 2017, Amtrak, through its employees and/or agents, operated, managed, maintained, supervised, owned, designed, constructed and/or controlled Train 501, originating in Seattle, Washington.

4.2    Plaintiff Jones purchased tickets, and on December 18, 2017, boarded Train 501 at the King Street Station in Seattle, Washington.  Plaintiff Jones was seated in Business Class, Car 2, Seat 5C.

4.3    At approximately 7:33 a.m., Train 501 traveled on a segment of railroad track about 40 miles south of Seattle, Washington that was operated, managed, maintained, supervised, owned, designed, constructed and/or controlled, or contracted to operate, manage,



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

1  maintain, supervise, own and/or control by Amtrak. Train 501 was operated by employees and/or agents of Amtrak.

4.4  This was the Train's inaugural run on this segment of track, part of the Bypass.

4.5  This segment of track was located at or near milepost ("MP") 19.86. A dangerous curve existed on this segment where the railroad track crossed over I-5 from west to east.

4.6  Beginning at MP 18.86 and encompassing this segment of track, the authorized track speed dropped to 30 mph. Two miles before the curve, a 30-mph speed sign was posted on the engineer's side of the track to warn operating crews of the upcoming speed restriction. Additionally, another 30-mph speed sign was on the wayside at the beginning of the curve on the engineer's side of the locomotive.

4.7  Nonetheless, Train 501 approached the curve and bridge crossing I-5 at a speed greatly exceeding the authorized, posted, safe, and/or reasonable speed limit for this track segment, ultimately derailing while travelling at 78 mph, causing serious injuries to Plaintiff Jones.

4.8  At all times relevant to this accident, Amtrak equipped Train 501 with a PTC system, but knowingly failed to make the system operable.

4.9  In 2008, Congress enacted the Rail Safety Improvement Act of 2008 ("RSIA"), which requires passenger railroads to install a PTC system no later than the end of 2015.

4.10  The PTC systems mandated by Congress were designed specifically to increase safety and prevent derailments caused by excessive speeds, among other purposes.

COMPLAINT - 8 of 14


PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

4.11   PTC provides real-time information to train crew members about, among other things, the areas in which a train must be slowed or stopped and the speed limits at approaching curves and other reduced-speed locations.

4.12   PTC also warns the train crew of the train's safe braking distance in curved or reduced-speed locations, and displays the same on screens inside the locomotive's cab.

4.13   If the engineer does not respond to the ample warnings and on-screen displays, the PTC system will automatically activate the brakes and safely slow or stop the train.

4.14   At all times relevant hereto, PTC systems were affordable, available, feasible, and intended to improve safety.

4.15   Amtrak knowingly and intentionally failed to put in place and utilize an operable PTC or similar safety control system on Train 501 and the segment of railroad track where this tragic and preventable accident occurred.

4.16   The failure to have PTC was a factor that caused Amtrak Train 188 to derail in Philadelphia, PA, in 2015.

4.17   For at least two (2) years prior to December 18, 2017, Amtrak knew that train control systems could prevent derailments.

4.18   Amtrak failed to use available train control systems and other safety technologies that would have prevented the derailment or mitigated its effects.

4.19   Additionally, as reported on December 23, 2017, by the *Seattle Times*, multiple Amtrak workers had expressed concerns with the adequacy of Amtrak's training of its engineers and conductors regarding Train 501's route.  One of the primary purposes of such training is to familiarize crewmembers with landmarks, intersections, speed signs, and other route details in order to develop location awareness.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

4.20 Among the Amtrak workers' concerns of inadequate training were that "engineers had been piled into a single locomotive car to do training runs as a group, that conductors were largely kept in cars farther back in the train or on the trailing locomotive, that some did their familiarization runs in the dark after midnight, and that supervisors were unwilling or unavailable to answer questions about key route characteristics such as speed."

4.21 According to a former railroad engineer who now investigates railroad accidents, such training was inadequate for multiple reasons, such as failing to have one-on-one training, failing to conduct training from the front cab, and conducting training in the dark. Such conditions defeat route training's purpose of familiarization and location awareness, both of which are critical to passenger safety. According to the former engineer, the inadequate training policies and practices utilized by Amtrak regarding Train 501's route "were a sign of a rushed effort to start new service without properly preparing crew members."

4.22 Amtrak failed to properly train its agents and/or employees regarding Train 501's route.

4.23 As a result of the derailment, Plaintiff Jones has suffered physical and emotional injuries, including but not limited to multiple broken bones; disability; loss of enjoyment of life; anxiety; distress and emotional trauma; physical impairment; pecuniary and economic losses; and other injuries, harm, and noneconomic damages which are ongoing.

4.24 As a result of the derailment and Plaintiff Jones's resulting injuries, Plaintiff Rezai has suffered injuries, including but not limited to loss of enjoyment of life; anxiety; distress and emotional trauma; pecuniary and economic losses; and loss of consortium including loss of love, affection, care, services, companionship, and society and consortium.

COMPLAINT - 10 of 14



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

## V. CAUSES OF ACTION

### A. COUNT I - NEGLIGENCE

5.1 Plaintiffs re-allege the paragraphs set forth above and below.

5.2 At all material times, Amtrak, through its agents and/or employees, was a common carrier and owed passenger Jones the highest duty of care.

5.3 Amtrak, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

(a) Failed to slow down Train 501 when it knew or should have known that the speed was too fast for the sharp and dangerous curve;

(b) Operated Train 501 in excess of the authorized, posted, safe and/or lawful speed limit;

(c) Failed to install and render operable proper train-control, safety, and speed systems, including PTC;

(d) Operated the train without keeping a safe and proper lookout;

(e) Failed to comply with Amtrak's own operational and safety plans, protocols, rules, standards, and procedures;

(f) Failed to comply with the applicable federal standards of care, including but not limited to the failure to comply with applicable federal statutes or regulations;

(g) Failed to properly train its agents and/or employees in the safe operations of the Train;

(h) Failed to properly train its agents and/or employees regarding the track at issue;

(i) Failed to properly supervise its agents and/or employees in the proper operation of the Train;

(j) Failed to exercise ordinary and reasonable care in the design, construction, inspection, approval, maintenance, repair, and operation of the track where Train 501 derailed; and

(k) Failed to design, manufacture, inspect, maintain, and/or repair the locomotives and cars on Train 501 and all components and parts thereto safely.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

5.4 Amtrak's negligence resulted in Train 501's derailment and was a proximate cause of Plaintiffs' injuries and damages.

**B. COUNT II – VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("CPA")**

5.5 Plaintiffs re-allege the paragraphs set forth above and below.

5.6 Amtrak failed to provide material information to Plaintiff Jones, a paid passenger, including but not limited to the failure to inform him that:

(a) The engineer had insufficient experience and/or training to safely operate Train 501 on the route originating in Seattle and/or the segment of track on which the Train derailed on December 18, 2017;

(b) Amtrak operated Train 501 with an assistant conductor who was neither certified nor qualified;

(c) Amtrak operated Train 501 without enabling and/or providing a fully operational PTC or other safety devices.

5.7 Amtrak, through the above-described practices and as will be further developed in discovery, has engaged in a pattern of unfair, deceptive, and unlawful conduct pursuant to a common policy that has the capacity to deceive a substantial portion of the public in violation of the CPA, chapter 19.86 RCW, entitling Plaintiff Jones to treble damages, reasonable attorney fees, costs of suit, and such other relief as may be permitted by statute.

5.8 Amtrak's CPA violations have directly and proximately caused injury, damages, and losses, including loss of business or property, to Plaintiff Jones.

## VI.  PRAYER FOR RELIEF

6.1 Plaintiffs pray for judgment against Amtrak, as follows:

6.2 General damages, including pain and suffering, disability, and loss of enjoyment of life, and other damages provided by law in amounts to be proven at trial;



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

6.3     Past and future medial and out-of-pocket expenses in an amount to be proven at trial;

6.4     Expenses of other care and services in an amount to be proven at trial;

6.5     Past and future economic damages in an amount to be proven at trial;

6.6     Lost earning capacity in an amount to be proven at trial;

6.7     All losses, injuries, treble damages, and all other damages recoverable under the CPA, as well as all recoverable fees, costs, and attorney fees;

6.8     Punitive and/or exemplary damages under choice of law principles due to Amtrak's will disregard of the rights of Plaintiffs and the public and outrageous and reckless conduct toward the safety of Plaintiffs and the public;

6.9     All other damages allowed by law;

6.10    Pre-judgment and post-judgment interest as allowed by law;

6.11    Costs of litigation incurred herein; s

6.12    Injunctive relief to protect the public; and

6.13    Such other and further relief as the Court deems just and equitable.

Plaintiffs specifically reserve the right to pursue additional causes of action, claims, and/or forms of relief other than those specifically outlined above, that are supported by the facts pleaded herein or that may be supported by other facts that emerge during discovery.

///

///

///

///

///



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law

DATED this 16th day of January, 2018.

> PFAU COCHRAN VERTETIS AMALA PLLC
>
> By: *Darrell L. Cochran*
> Darrell L. Cochran, WSBA #22851
> darrell@pcvalaw.com
> Thomas B. Vertetis, WSBA #29805
> tom@pcvalaw.com
> Christopher E. Love, WSBA #42832
> chris@pcvalaw.com
> Attorneys for Plaintiffs



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcva.law